IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY J. QUINN, | : | |
| | : | Case No. 4:18-cv-2615 |
| Plaintiff, | : | |
| | : | Judge Pearson |
| v. | : | |
| | : | Magistrate Judge Burke |
| MR. F. RETORT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## THE STATE OF OHIO'S STATUS UPDATE

On February 8, 2019, this Court issued an order requiring The State of Ohio[1] to file a Status Update that informs the Court of its investigation of Plaintiff's complaints and suggest next steps, including when the Court should conduct a hearing on Plaintiff's Motion for Preliminary Injunction. [Doc. #: 8]. The court ordered status report is attached below.

DAVE YOST
Ohio Attorney General

/s/Byron D. Turner
BYRON D. TURNER (0096388)
Assistant Attorney General
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7233; (fax )(844) 237-7628
Byron.Turner@OhioAttorneyGeneral.gov

*Counsel for the State of Ohio*

---

[1] The State of Ohio is appearing as an interested party. [Doc. #: 5]. The Defendants have not yet appeared or been served in this case. [Civil Docket].

## STATUS UPDATE

### A. Quinn's Allegations

Plaintiff Jeremy Quinn ("Plaintiff") alleges that on January 12, 2019, Correction Officers Retort, Kilmer, and a third officer were dispersing lunch time food trays in his block. [Doc. #: 4-5]. Plaintiff alleges that the officers intentionally gave him an empty food tray in retaliation, though he does not specifically allege from what they are retaliating. [Doc. #: 4]. He further contends that he got the attention of Lt. Drummond who provided him a tray with food on it. [Doc. #: 4-5].

### B. Investigative Findings

The undersigned visited the Ohio State Penitentiary ("OSP") on Monday, February 11, 2019 to investigate Plaintiff's allegations. I met and spoke with Warden Richard Bowen, Warden's Assistant Thomas Horton, and Lt. Drummond regarding Plaintiff's specific allegations. I also met and spoke with other correction officers that disperse institutional meals to inmates about food disbursement and food service. Additionally, I observed correction officers pass out food to inmates.

Warden Bowen discussed institutional operations and meal disbursement. He indicated that no OSP staff - correction officers or otherwise - work in the cafeteria where food is prepared and placed on trays. He also informed me that every area where an inmate could be is recorded except the strip-out and medical areas. Food services are completely operated by employees of Aramark, the food services contractor for the Ohio Department of Rehabilitation and Correction ("ODRC"). No OSP employees or ODRC inmates work in the cafeteria at OSP. Warden Bowen explained that Aramark food services employees deliver food trays in large metal containers to the individual housing blocks, where the trays are dispersed to inmates. Correction officers do not have access to food trays until they arrive on the block. This entire process is captured on

video. If an officer were to throw out a food tray, it would be captured on video. Warden Bowen conducted rounds of the OSP housing units two days before Plaintiff mailed his motion. The Warden specifically recalled stopping at Plaintiff's cell front, that Plaintiff was at his cell front, and that Plaintiff did not make any complaints about food service or any other issues. Plaintiff has previously raised questions or concerns regarding other issues to Warden Bowen during rounds.

Next, Warden's Assistant Horton reinforced the information conveyed by Warden Bowen. Anything that occurs in the blocks is recorded, including food delivery. There are no blank spots or camera gaps. Warden's Assistant Horton stated that he occasionally receives inmate complaints relating to food services. He stated that he conducted rounds in Inmate Quinn's block contemporaneous with the alleged January 12, 2019 incident. He stated that Inmate Quinn did not inform him of any issues with food service or denials of food at that time. Warden's Assistant Horton indicated that it would be difficult for officers to remove a food tray from the containers, remove the food tray cover, find a place to dump the food, clean the tray completely, and place the cover back on it before giving it to an inmate. Additionally, inmate food trays remain covered until the inmate receives the food.

Lastly, I spoke with Lt. Drummond who provided Plaintiff a full food tray. She recalled that Plaintiff got her attention and stated that he was given a food tray with no food on it. She observed Plaintiff's tray and it did not appear to her that food had ever been on the tray. She stated that she immediately got Plaintiff another food tray. Lt. Drummond also viewed the footage from January 12, 2019, of the lunch time food delivery. She stated that she did not see Officer Kilmer or Officer Retort dump any food trays prior to passing out meals to inmates. Further, she stated that Officer Kilmer handed Plaintiff a covered food tray through the cuff-port.

3

She informed me that she could not tell from the video whether there was food on the tray at the time Plaintiff received it because the food trays remain covered until the inmates remove the covers. This is so food does not come into contact with cell doors.

After speaking with Warden Bowen, Warden's Assistant Horton, Lt. Drummond and other correction officers, I was able to conclude that officers do not have access to food trays prior to the metal containers holding the food trays arriving on the block. The food trays all look the same and are not numbered for specific delivery to specific cells. While there are some special dietary meals, such as vegetarian or kosher meals, Inmate Quinn does not have dietary restriction. The metal containers can be seen by cameras the entire time that they are on a cell block. It would be extremely difficult for officers remove a food tray and dispose of its contents without it being captured on video. Additionally, officers do not know which food trays will go to a particular inmate prior to handing the inmate the food tray through the cuff-port.

**C.     Food Delivery Operations**

First shift correction officers working B-Block explained the food delivery process from beginning to end. They explained that two metal food containers arrive on an elevator from food services containing food trays. One container is for the top range and the other is for the bottom range. They do not have access to the containers or food trays prior to their arrival on the block and the food trays are covered until the inmates uncover them.

The majority of the meals have the same contents. If there is a special dietary meal, then it is appropriately marked so that officers can distinguish them from the normal meals. Two to three officers deliver food to the bottom level of the range while another two to three officers deliver food to the top level of the range. One officer picks up three to four trays at once while the other officer opens the cuff-ports so that the trays can be handed to the inmates. If an inmate

4

refuses to accept a food tray, then officers mark down the meal and time that the inmate refused. Each inmate has a piece of paper on his door that tracks all of their meal refusals, shower times, recreation times, and medicine delivery. Additionally, if the inmate is not in his cell, the officers signal to the control tower to open the inmate's cell door. The officers then place the tray in the cell and signal to have the cell door closed. There was a single logistical issue with food delivery on the day that the undersigned was present: the top range ran out of bananas and hot trays. The officers delivering meals on the top range called down to the bottom range to inform them of the shortage. The issue was immediately resolved because the bottom range officers then gave the top range officers the spare trays that they had in their metal container.

The officers discussed some regular issues and complaints that they have experienced during chow delivery. They stated there are times when the food containers are delivered but do not have enough food trays on them. Additionally, there are times when the food trays do not have a specific item on them. The officers indicated that sometimes food services may run out of the particular item for the day, but an alternative item is generally provided. According to the officers, there are certain days where inmates try to get extra food depending on the entree. Inmates may complain that their food tray did not have a chicken patty or that it did not have pizza. Officers stated that they almost always inform food services of the issue and get the inmate an entirely new food tray.

Officers stated that it is rare for food trays to arrive from food services completely empty, though it is possible. They explained that inmates may scrape off a food tray, wash it, and then present the food tray as empty. The officers indicated that it would be extremely difficult for a correction officer to completely empty and clean an inmate food tray. They explained that this is

5

because officers do not handle the food trays prior to passing them out to inmates and any such action would be recorded on camera.

**D.     Actions Taken**

Since the issuance of the Court's Order, Warden Bowen has taken steps to significantly reduce, if not fully eliminate, the possibility that an inmate could receive an empty food tray. He is requiring that all OSP staff be reminded of the importance of all inmates receiving full food trays prior to beginning their shift. Additionally, he has reminded Aramark contractors of the importance of filling all of the food trays and providing the correct number of food trays for each meal.

Specific to Plaintiff, Warden Bowen restricted Officers Retort, Kilmer, and Griffiths from working in the same cell block where Plaintiff is housed. Additionally, Warden Bowen directed a Lieutenant to observe Plaintiff's food tray prior to the meal being served, in full view of a pod camera, so it can be recorded. Additionally, the Lieutenant checks with Plaintiff after meals are delivered to insure that he received a full food tray. The Lieutenant must also email OSP's administration that Plaintiff received his meal and that all the appropriate meals were served to him each day. He is also preserving footage of all meal deliveries to Plaintiff's cell.

On February 14, 2019, ODRC staff counsel Jocelyn Lowe held a meeting with Warden Bowen, Managing Director of Operations Ed Voorhies, Northeast Regional Director Todd Ishee, and Northwest Regional Director David Bobby to discuss the importance of food delivery to inmates, the consequences if an inmate is intentionally denied a meal, and how to address food delivery issues.

### E. Conclusions and Next Steps

Neither Officer Kilmer nor Officer Retort had access to Plaintiff's food tray prior to its arrival on the cell block. Once on the block, all movements of the food containers were recorded. The officers could not know which food tray was going to Plaintiff prior to handing it to him through the cuff-port. Lt. Drummond stated that, in the video recordings from January 12, 2019, she did not observe either officer dump Plaintiff's food tray on January 12, 2019. Plaintiff received a covered food tray and it could not be observed from reviewing the video whether or not the tray had food on it.

Since learning of Plaintiff's allegations, ODRC, Warden Bowen, and OSP staff have taken immediate and significant steps to insure that all inmates are receive full food trays. Additionally, regular reminders will be given to OSP and Aramark staff of the importance providing inmates food and proper food delivery.

The Court additionally requested next steps for this case. It is recommended that the Court complete the initial screening pursuant to 28 U.S.C. § 1915. Additionally, the State respectfully submits that the Court should conduct a full evidentiary hearing to resolve Plaintiff's Motion for Preliminary Injunction [Doc. #: 4], alleging Officers Retort and Kilmer provided him an empty food tray on January 12, 2019. The State believes that such hearing could be completed in a single day.

### F. Preliminary Injunction Hearing

The State of Ohio respectfully requests that the Preliminary Injunction Hearing occur between Monday, February 25, 2019 and Thursday, February 28, 2019.

DAVE YOST
Ohio Attorney General

/s/Byron D. Turner
BYRON D. TURNER (0096388)
Assistant Attorney General
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7233; (fax )(844) 237-7628
Byron.Turner@OhioAttorneyGeneral.gov

*Counsel for the State of Ohio*

## CERTIFICATE OF SERVICE

I certify that the foregoing *The State of Ohio's Status Update* was filed via electronic transmission on February 15, 2019, and was hand-delivered to Jeremy J. Quinn, #509-127, Ohio State Penitentiary, 878 Coitsville-Hubbard Road, Youngstown, Ohio 44505.

/s/Byron D. Turner
BYRON D. TURNER
Assistant Attorney General

8