PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY J. QUINN, | ) | |
| | ) | CASE NO.  4:18CV2615 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| MR. F. RETORT, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 54] |

Pending in this prisoner civil rights case under 42 U.S.C. § 1983 is Defendants Francis

Retort, Brady Kilmer, Michael Franklin, Justin Griffiths, and Robert Wolfe's Motion for

Summary Judgment (ECF No. 54).  The Court has been advised, having reviewed the record, the

parties' briefs,[1] and the applicable law.  For the reasons that follow, the Court grants the motion.

---

[1] Defendants did not file a permissive reply memorandum in support of ECF No. 54.  *See* LR 7.1(e).

(4:18CV2615)

## I.  Stipulated Facts

The stipulated facts[2] are as follows:

1.  *Pro Se* Plaintiff Jeremy Quinn (A509-127) was an inmate incarcerated at the Ohio State Penitentiary ("OSP") at the time of the events giving rise to the allegations contained in the Complaint (ECF No. 1).

2.  Plaintiff alleges that Defendants deprived him of his constitutional rights within the following dates:

> a.  December 1, 2017 - December 10, 2017 ( excessive use of force, retaliation);
>
> b.  September 14, 2018 - September 15, 2018 (retaliation); and,
>
> c.  September 22, 2018 (retaliation via cell search).

3.  Plaintiff also generally alleges failure to protect, violation of due process, and a violation of his Fifth Amendment rights.

4.  Defendants Francis Retort, Brady Kilmer, and Justin Griffiths were correction officers at the OSP, within the Ohio Department of Rehabilitation & Correction ("ODRC"), at the time of the events giving rise to the allegations contained in the Complaint (ECF No. 1).

5. Defendant Robert Wolfe was the Inspector of Institutional Services at the OSP, within the ODRC, at the time of the events giving rise to the allegations contained in the Complaint (ECF No. 1).

6.  Defendant Michael Franklin was a Sergeant at the OSP, within the ODRC, at the time of the events giving rise to the allegations contained in the Complaint (ECF No. 1).

---

[2] *See* Stipulations of the Parties (ECF No. 54-1).

(4:18CV2615)

7.  Wolfe investigated all matters alleged in the Complaint (ECF No. 1).

8.  The remaining allegations against Wolfe are:

      a.  Failure to protect under the Eighth Amendment, and

      b. Violation of Due Process under the Fourteenth Amendment.

9.  Plaintiff had an opportunity to speak with Wolfe for each investigation conducted.

10.  With regard to the three date ranges referenced in Stipulation No. 2, Plaintiff's institutional grievances were denied by Wolfe.

11.  The Chief lnspector's Office affirmed the denial of Plaintiff's institutional grievances.

12.  The sole remaining claim against Franklin is failure to protect under the Eighth Amendment.

13.  Franklin acted as the Hearing Officer for the conduct reports written against Plaintiff in the three date ranges referenced in Stipulation No. 2.

14.  Griffiths was not involved in any of the December, 2017 allegations mentioned in Stipulation No. 2.

15.  Griffiths authored incident and conduct reports involving Plaintiff on September 15, 2018 resulting in a Rule 21 (disobedience of a direct order) violation.

16.  Griffiths searched Plaintiff's cell on September 22, 2018 at approximately 10:30 a.m. and no contraband was found.

17.  The remaining allegations against Retort and Kilmer are:

      a.  Excessive use of force under the Eighth Amendment, and

3

(4:18CV2615)

     b. Retaliation under the First Amendment.

18. Retort authored incident and conduct reports in relation to the December 1, 2017 allegations, resulting in Rule 20 (physical resistance to a direct order), Rule 21 (disobedience of a direct order), Rule 26 (disrespect to an officer, staff member, visitor or other inmate), and Rule 27 (giving false information or lying to departmental employees) violations.

19. Retort did not author incident or conduct reports in relation to the September, 2018 allegations.

20. Kilmer authored an incident report in relation to the December 1, 2017 allegation.

21. Kilmer authored incident and conduct reports in relation to the September 14, 2017 allegation, resulting in Rule 8 (threatening bodily harm to another) and Rule 51 (possession of contraband) violations.

22. Kilmer authored an additional conduct report on September 14, 2017, resulting in Rule 27 (giving false information or lying to departmental employees) violations.

23. Paragraphs 47-51 of the Complaint (ECF No. 1) allege that Retort and Griffiths sexually harassed and threatened Plaintiff.  This stipulation, however, is *not* a stipulation that the alleged acts actually occurred.[3]

## II. Background

The Complaint (ECF No. 1) alleges Defendants deprived Plaintiff of his constitutional rights within the following dates:  (1) December 1, 2017 - December 10, 2017 (excessive use of

---

[3] *See* Order (ECF No. 60).

4

(4:18CV2615)

force, retaliation); (2) September 14, 2018 - September 15, 2018 (retaliation); and, (3) September 22, 2018 (retaliation via cell search). Stipulation No. 2.

Plaintiff alleges that he was deprived of his constitutional rights by Retort and Kilmer on December 1, 9, and 10, 2017. He asserts that Retort and Kilmer used excessive force and retaliated against him in violation of the Eighth and First Amendments, respectively. On December 1, 2017, Retort and Kilmer removed Plaintiff from the shower area of Pod 6. Plaintiff verbally accosted the officers as they approached because he felt that he had been in the shower for too long. After Plaintiff was escorted to his cell, Kilmer attempted to remove Plaintiff's handcuffs, but he refused to surrender them. This refusal was documented in reports written by Retort and Kilmer. *See* RIB History and Documents of Plaintiff (ECF No. 54-6). Kilmer was able to get control of the handcuffs and Retort signaled for the cell door to be closed. As the door was closing, Plaintiff stated that he was suicidal. As the officers began to escort him to see mental health, Plaintiff refused directives to keep his head straight and began resisting the escort. To reestablish control, the officers initiated a hands-on escort and placed Plaintiff in the institutional barber shop. *See* ECF No. 54-6. Retort authored incident and conduct reports in relation to the December 1, 2017 allegations, resulting in Rule 20 (physical resistance to a direct order), Rule 21 (disobedience of a direct order), Rule 26 (disrespect to an officer, staff member, visitor or other inmate), and Rule 27 (giving false information or lying to departmental employees) violations. Stipulation No. 18. Kilmer also wrote an incident report regarding this incident. Stipulation No. 20.

5

(4:18CV2615)

Wolfe investigated the incident in connection with a grievance filed by Plaintiff.  *See* Declaration of Robert Wolfe (ECF No. 54-4).  He interviewed various individuals, ordered a medical exam, and reviewed the then-existing security footage.  Wolfe found no evidence that "Defendant Kilmer or Defendant Retort ulitize[d] force."  ECF No. 54-4 at PageID #: 412, ¶ 21. Additionally, when he reviewed the security footage, "there was no evidence that Officer Retort slammed Plaintiff's head into a wall."  ECF No. 54-4 at PageID #: 412, ¶ 22.  According to Wolfe, the medical examination did not reveal any injuries to Plaintiff.  The Rules Infraction Board ("RIB") later found Plaintiff guilty of all rule violations in this incident.  *See* ECF No. 54-6.

Plaintiff also alleges that, on December 9 and 10, 2017, Retort and Kilmer used handcuff tethers[4] as a leash and barked at him while calling him a "mutt" as a means to retaliate against him for writing an informal complaint against them.  Wolfe investigated these allegations through the institutional grievance procedure soon after they were made.  *See* ECF No. 54-4.

Next, Plaintiff alleges that Retort, Kilmer, and Griffiths violated his First Amendment right to be free from retaliation.  He asserts that on September 14, 2018, Kilmer was harassing Plaintiff asking to see his paperwork.  There is no dispute that Plaintiff did show Kilmer the relevant documentation.  *See* Declaration of Brady Kilmer (ECF No. 54-3).  According to Plaintiff, when he showed his paperwork, Kilmer responded by claiming it was a threat and

---

[4] Handcuff tethers are handcuffs attached to a wire.  This device is used when inmates have previously refused to forfeit their handcuffs.  It allows officers to keep an inmate near the cuff port after they have entered a cell so they can unlock the handcuffs. When pulled, the inmate is pulled backward without the handcuffs being tightened.  ECF No. 54 at PageID #: 377 n. 1.

6

(4:18CV2615)

issuing him a conduct report.  Plaintiff stated he was having chest pains and needed medical

attention, but then recanted and refused to go see medical when Retort and Griffiths arrived to

escort Plaintiff.  *See* ECF No. 54-6.  Kilmer immediately turned the paperwork over to a

Lieutenant and wrote a conduct report regarding the incident.  *See* ECF No. 54-3.  Kilmer

authored incident and conduct reports in relation to the September 14, 2017 allegation, resulting

in Rule 8 (threatening bodily harm to another) and Rule 51 (possession of contraband) violations.

Stipulation No. 21.  The RIB later found Plaintiff guilty of the rule violations.  *See* ECF No. 54-

3; ECF No. 54-6.  Kilmer also authored an additional conduct report on September 14, 2017,

resulting in Rule 27 (giving false information or lying to departmental employees) violations that

were decided at the Hearing Officer Level and Plaintiff was also found guilty.  Stipulation No.

22; *see* ECF No. 54-4; ECF No. 54-6.

Plaintiff also alleges that on September 15, 2018, Retort and Griffiths conducted a

retaliatory cell search.  There is, however, no evidence of Plaintiff's cell being searched on

September 15, 2018.  *See* OSP Cell Search Logs - Sept. 2018 (ECF No. 54-7).  Griffiths did

write a conduct report against Plaintiff on September 15, 2018 for refusing a direct order to

return his meal tray.  *See* ECF No. 54-6.  And Griffiths searched Plaintiff's cell on September 22,

2018 and no contraband was found.  Stipulation No. 16.  This occurred at 10:30 a.m.  *See* ECF

No. 54-7.  However, Griffths did find that Plaintiff's mattress had been ripped open, so a conduct

report was written citing Plaintiff for a Rule 49 (destruction, alteration, or misuse of property)

violation.  *See* ECF No. 54-6.

(4:18CV2615)

In addition, Plaintiff alleges that on September 22, 2018, Retort and Griffiths, while conducting a strip search, retaliated against Plaintiff by telling him to stick his fingers in his anus. This occurred between 12:00 p.m. Noon and 2:30 p.m. *See* Grievance History and Documents of Plaintiff (ECF No. 54-5). Kilmer was not present for the alleged strip search. *See* ECF No. 54-3; ECF No. 54-5. In response to Plaintiff's grievance related to the September 22, 2018 allegations, Defendants stated Plaintiff has a pattern of filing grievances any time he is issued a conduct report. *See* ECF No. 54-5. Wolfe investigated Plaintiff's allegation shortly after it was made via the institutional grievance procedure. Retort and Griffiths denied making such statements *See* ECF No. 54-4.

Finally, Plaintiff alleges that (1) Wolfe and Franklin failed to protect him throughout all of the incidents in violation of the Eighth Amendment, and (2) Franklin violated his due process rights under the Fifth Amendment.

### III. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has

(4:18CV2615)

failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand

9

(4:18CV2615)

summary judgment, the non-movant must show sufficient evidence to create a genuine issue of

material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

    The existence of a mere scintilla of evidence in support of the non-moving party's

position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.* (citing

*Anderson*, 477 U.S. at 252). "The absence of additional evidence to support a party's position

beyond his own self-serving testimony is insufficient to overcome a motion for summary

judgment." *Britenriker v. Mock*, No. 3:08CV1890, 2009 WL 2392917, at *5 n.1 (N.D. Ohio

July 31, 2009) (Zouhary, J.) (citing *Bryant v. Mahoning County Bd. of Comm'rs*,, report &

*recommendation adopted*, No. 4:05CV2783, 2007 WL 1725314, at *7 (N.D. Ohio June 13,

2007) (Economus, J.); *Evans v. Techs. Application & Serv. Co.*, 80 F.3d 954, 962 (4th Cir.

1994)).

### IV. Analysis

In *Bryant*, the district court stated:

> Plaintiff, as the nonmovant on summary judgment, must take affirmative steps in
> order to avoid the entry of summary judgment. Fed. R. Civ. P. 56(e). He must
> present additional evidence beyond the pleadings and must do so by presenting
> more than a scintilla of evidence in support of his position. *Anderson*, 477 U.S. at
> 252. Plaintiff here presents nothing more than his own self-serving statements in
> order to establish that Mrs. Engleman continuously barraged him with sexual
> advances and comments all day and everyday and that others in the office saw and
> heard the sexual conduct and comments. He also presents only a self-serving
> statement that he informed his supervisor of the harassment, but his supervisor did
> nothing. This is insufficient to overcome the motion for summary judgment. *See*
> *Gunthorpe v. DaimlerChrysler Corp.*, 205 F. Supp.2d 820, 825 (N.D. Ohio 2002).
> "Plaintiff does not direct the Court to any evidence, such as affidavits or
> deposition testimony other than his own," in order to establish his claims. *Id.* . . .
> Accordingly, Plaintiff has no "additional" evidence to support his position beyond
> his own self-serving statements and complaint allegations.

(4:18CV2615)

2007 WL 1725314, at *7.  As in *Bryant*, Plaintiff in the case at bar has not presented additional

evidence to support his position beyond his own self-serving statements and complaint

allegations in order to establish that Defendants deprived him of his constitutional rights.  He

does not direct the Court to any evidence, such as affidavits or deposition testimony, in order to

establish his claims.

### A. Due Process Claim Under the Fifth Amendment

Plaintiff's claim of a violation of his Fifth Amendment right to due process is dismissed

because Franklin is not an agent of the federal government.  The Fifth Amendment's Due Process

Clause circumscribes only the actions of the federal government.  *Scott v. Clay County, Tenn.*,

205 F.3d 867, 873 n. 8 (6th Cir. 2000).  Therefore, claims against a State or its agents under the

Fifth Amendment must be dismissed.  *DeSilva v. State Med. Bd. of Ohio*, No. 1:09cv683, 2010

WL 1644209, at *11 (S.D. Ohio April 23, 2010).  Moreover, Plaintiff offers no opposition to

Defendants' argument.  *See* Memorandum in Opposition (ECF No. 59).  Because Plaintiff failed

to meet his burden in opposing summary judgment on his due process claim under the Fifth

Amendment, Plaintiff has abandoned this claim and waived any argument concerning dismissal

of such claim.  "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to

address it in response to a motion for summary judgment."  *Brown v. VHS of Mich., Inc.*, 545

Fed.Appx. 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484,

487 (6th Cir. 2011).

11

(4:18CV2615)

**B.** **December 1, 2017 - December 10, 2017 Claims for Excessive Use of Force and Retaliation**

These claims fail because Plaintiff does not establish Eighth or First Amendment violations.

**1.** **Excessive Use of Force**

The standard used to analyze excessive force claims under the Eighth Amendment requires the Court to determine whether Retort and Kilmer acted in a good faith effort to maintain or restore discipline, or whether they acted maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). That is not to suggest that every angry touch by a prison guard gives rise to a federal cause of action. Prison officials may often be required to use physical contact to insure prison security. *Hudson*. 503 U.S. at 9. The physical contact will rise to the level of an Eighth Amendment violation only if the contact represents an "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In determining whether the use of force was wanton and unnecessary, the extent of injury suffered by an inmate is one factor that may be considered, along with other factors including "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Generally, if the force applied is grossly disproportionate to the offense committed by the prisoner, a plaintiff states a cause of action for use of excessive force. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981).

12

(4:18CV2615)

There is both an objective and subjective component to Eighth Amendment claims.

*Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).  The Court "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).  In evaluating the subjective component, courts consider "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321).  The objective component requires that a plaintiff's injury or pain be "sufficiently serious." *Williams v. Curtain*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson*, 501 U.S. at 298).  The "objective component . . . is therefore contextual and responsive to 'contemporary standards of decency." *Id.* at 8 (quoting *Estelle*, 429 U.S. at 103).  "In the excessive force context . . . [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* at 9.

Neither Retort nor Kilmer used excessive force against Plaintiff on December 1, 2017. To establish an excessive use of force claim, Plaintiff must show that the actions of Retort and Kilmer were malicious and sadistic. *Wilson*, 501 U.S. at 298.  A hands-on escort is not the type of action the Eighth Amendment sought to prevent.  Objectively, the use of hands during an escort is not "sufficiently serious" to trigger the Eighth Amendment.  Subjectively, Retort and Kilmer used their hands during the escort to reestablish control of Plaintiff.  Plaintiff is unable to

13

(4:18CV2615)

satisfy either the objective or subjective component of the Eighth Amendment analysis against

Retort and Kilmer.  Accordingly, these claims under the Eighth Amendment are dismissed.[5]

### 2.    Retaliation

In order to state a First Amendment retaliation claim, Plaintiff must plead each of the

following elements:  "(1) the plaintiff engaged in protected conduct; (2) and adverse action was

taken against the plaintiff that would deter a person of ordinary firmness from continuing to

engage in that conduct; and (3) there is a causal connection between elements one and two—that

is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

*Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (quoting *Thaddeus-X v. Blatter*, 175 F.3d

378, 394 (6th Cir. 2000) (en banc)).  "A First Amendment claim can be based on a false conduct

report issued in retaliation for a grievance."  *Hill v. Henderson*, No. 3:17CV825, 2017 WL

4182308, at *4 (N.D. Ohio Sept. 21, 2017) (Zouhary, J.) (citing *Thomas v. Eby*, 481 F.3d 434,

440-42 (6th Cir. 2007); *Scott v. Churchill*, 377 F.3d 565, 570-71 (6th Cir. 2004)).  Furthermore,

Plaintiff's filing of a prison grievance is constitutionally protected conduct for which he cannot

be subjected to retaliation.  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).  Grievances,

however, only qualify as protected conduct under the First Amendment if they are not frivolous.

*Henderson*, 2017 WL 4182308 at *4 (citing *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010);

---

[5]  Plaintiff also failed to exhaust his administrative remedies as they relate to
Kilmer for the December 1, 2017 incident.  *See* ECF No. 54-4.  Plaintiff submitted an
informal complaint resolution, a notification, and an appeal to the Chief Inspector,
pursuant to OHIO ADMIN. CODE 5120-9-31(J).  At no time, however, did Plaintiff mention
Kilmer in any of these documents.  *See* ECF No. 54-5. The administrative process never
began as to Defendant Kilmer.

14

(4:18CV2615)

*Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).  "[L]egal claims against [prison]

officials . . . [are] protected conduct only to the extent that the underlying claims had merit."

*Herron*, 203 F.3d at 415.

Another limitation to this right arises when an inmate violates a legitimate prison

regulation.  "The threshold question is therefore whether that comment [about the Hearing

Officer] was 'protected conduct' under the first prong of the Thaddeus-X test."  *Lockett v.*

*Suardini*, 526 F.3d 866, 874 (6th Cir. 2008).  "[I]f a prisoner violates a legitimate prison

regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the

retaliation analysis.  *Thaddeus-X*, 175 F.3d at 395; *see also Turner v. Safley*, 482 U.S. 78, 89

(1987) (holding that a prison regulation that "impinges on inmates' constitutional rights" is

nevertheless valid if that regulation "is reasonably related to legitimate penological interests").

"A prisoner's behavior in violation of prison regulations, including insolence, is not 'protected

conduct' under the First Amendment."  *Lewis v. Grabowski*, No. 18-CV-13530, 2019 WL

861142, at *2 (E.D. Mich. Feb. 22, 2019) (citing *Lockett*, 526 F.3d at 874).

As to adverse action, the United States Court of Appeals for the Sixth Circuit has held

that "not every objectionable act directed at a prisoner constitutes adverse action sufficient to

deter a person of ordinary firmness from engaging in protected activities."  *Reynolds-Bey v.*

*Harris*, 428 Fed.Appx. 493, 503 (6th Cir. 2011).  Courts have determined the "person of ordinary

firmness" standard includes initiating a retaliatory transfer to another prison when it will result in

foreseeable negative consequences to the prisoner, *Siggers-El v. Barlow*, 412 F.3d 693, 701-702

(6th Cir. 2005), issuing major misconduct reports that could result in loss of disciplinary credits,

15

(4:18CV2615)

*Thomas*, 481 F.3d at 441, and threatening the use of physical force, *Thaddeus-X*, 175 F.3d at 398.

However, the Sixth Circuit has opined that "prisoners are expected to endure more than the

average citizen," *Siggers-El,* 412 F.3d at 701.  As in the case at bar, "conclusory allegations of

retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under

§ 1983.' " *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*,

826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also* *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").

Plaintiff alleges that on December 9 and 10, 2017, Retort and Kilmer used handcuff

tethers as a leash while barking at him as a form of retaliation for him filing an institutional

grievance against them.  Defendants do not dispute that filing an institutional grievance is

protected conduct under the First Amendment.  ECF No. 54 at PageID #: 385.  Defendants do,

however, dispute Plaintiff's allegations regarding the first element of a First Amendment

retaliation claim.  When Wolfe investigated this allegation as an institutional grievance, he

interviewed the relevant individuals and reviewed security footage.  *See* ECF No. 54-4.  "The

security footage did not display evidence of Defendant Kilmer or Defendant Retort barking or

making statements about walking a mutt during either escort of Plaintiff."  ECF No. 54-4 at

PageID #: 413, ¶ 30.  The lack of evidence suggests that the grievance was frivolous, negating

the protection afforded by the First Amendment.  Moreover, Retort and Kilmer retained the

discretion to use handcuff tethers based on Plaintiff refusing to surrender his handcuffs on

December 1, 2017.  The use of handcuff tethers was not an adverse action taken to deter Plaintiff

16

(4:18CV2615)

from filing grievances, but rather a direct response to Plaintiff refusing to surrender his handcuffs eight days earlier. This refusal was documented in reports written by Retort and Kilmer. *See* ECF No. 54-6. The lack of an adverse action also severs the possibility of the connection between Plaintiff's protected conduct and the use of handcuff tethers. Accordingly, Plaintiff's First Amendment retaliation claim against Retort and Kilmer is dismissed.

### C.    September 14, 2018 Claims for Retaliation

Plaintiff alleges that he was retaliated against in September 2018 for institutional grievances that he wrote against Retort and Kilmer in December 2017. Notably, in these claims there is a full nine months separating Plaintiff's most recent grievance from the alleged adverse actions against Plaintiff.

Plaintiff alleges that Kilmer retaliated against him by writing two false conduct reports. The first was written after Plaintiff showed Kilmer the paper work that caused him to be sent to the OSP, a maximum-security facility. Kilmer authored incident and conduct reports in relation to the September 14, 2017 allegation, resulting in Rule 8 (threatening bodily harm to another) and Rule 51 (possession of contraband) violations. Stipulation No. 21; ECF No. 54-3. The second was written by Kilmer after Plaintiff complained of chest pains, but then recanted and refused to go see medical when the escort arrived; resulting in Rule 27 (giving false information or lying to departmental employees) violations. Stipulation No. 22; *see* ECF No. 54-6.

The act of writing a conduct report, alone, is insufficient to constitute an adverse action. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g.*, *Reeves v. Mohr*, No. 4:11CV2062,

(4:18CV2615)

2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (Pearson, J.) (and cases cited therein) (holding

that the inmate failed to state a claim upon which relief may be granted to the extent that he

claimed he had "a constitutional right to be free from false accusations").

Plaintiff has not established either the second or third element in the retaliation analysis in

either instance because (1) he cannot show that an adverse action was taken, and (2) he cannot

show a connection between an adverse action and his protected conduct.  Moreover, there was no

prior protected conduct as to Griffiths because Plaintiff had not previously submitted a grievance

against him.  *Muhammad*, 379 F.3d at 416.  Accordingly, these First Amendment retaliation

claims against Kilmer, Retort, and Griffiths are dismissed.

      **D.**      **September 15, 2018 Claim for Retaliation**

Plaintiff alleges Retort and Griffiths conducted a retaliatory cell search on September 15,

2018.  "A single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern

of previous questionable shakedowns or other such factors, would not meet the adverse action

standard."  *Reynolds-Bey*, 428 Fed.Appx. at 503-504; *see also Tate v. Campbell*, 85 Fed.Appx.

413, 417 (6th Cir. 2003) ("[T]he single search of a prison cubicle would not deter a person of

'ordinary firmness' from pursuing constitutional grievances.") (citing *Thaddeus-X*, 175 F.3d at

396).

All cell searches at the OSP are recorded.  There is no record or evidence that Retort

and/or Griffiths searched Plaintiff's cell on September 15, 2018.  *See* ECF No. 54-7.  Plaintiff's

alleged protected conduct is writing a grievance against Retort nine months earlier.  There is no

(4:18CV2615)

prior asserted protected conduct relating to Griffiths.[6]  Additionally, no adverse action could have occurred because there is no evidence that a cell search occurred on September 15, 2018. Finally, a single cell search is insufficient to establish adverse action.  *Reynolds-Bey*, 428 Fed.Appx. at 503-504.  Consequently, Plaintiff is unable to establish the second and third elements in the retaliation analysis against either Retort or Griffiths.  Plaintiff has also not established the first element of the retaliation analysis against Griffiths.  *Muhammad*, 379 F.3d at 416.  Accordingly, this First Amendment retaliation claim against Retort and Griffiths is dismissed.

### E.      September 22, 2018 Claim for Retaliation

Plaintiff alleges Retort and Griffiths retaliated against him on September 22, 2018.  First, he asserts Griffiths conducted a retaliatory cell search.  Then, Plaintiff alleges Griffiths and Retort used a strip search to harass him.  It appears from Plaintiff's allegations that these incidents happened consecutively.  However, the evidence shows the cell search occurred at approximately 10:30 a.m.  *See* ECF No. 54-7.  According to Plaintiff's grievance relating to this incident, the strip search occurred between 12:00 p.m. Noon and 2:30 p.m.  *See* ECF No. 54-5.

### 1.      Cell Search

Plaintiff alleges this is the second retaliatory search.  But, there is no record or evidence that the first search ever occurred on September 15, 2020.  The September 22, 2018 cell search is the first recorded search within the relevant time periods.  *See* ECF No. 54-7.  During the cell

---

[6]  Griffiths did write a conduct report against Plaintiff on September 15, 2018 for refusing a direct order to return his food tray.  *See* ECF No. 54-6.

(4:18CV2615)

search, Griffiths discovered Plaintiff's mattress had been ripped open, so a conduct report was written citing Plaintiff for a Rule 49 (destruction, alteration, or misuse of property) violation, which was decided by the Hearing Officer. *See* ECF No. 54-6. Before this search, Plaintiff's cell had not been searched since September 4, 2018 by Officers Seech and Nail. *See* ECF No. 54-6.

A single cell search is insufficient to establish an adverse action. *Reynolds-Bey*, 428 Fed.Appx. at 503-504; *see also Tate*, 85 Fed.Appx. at 417. This is the first cell search Griffiths performed of Plaintiff's cell within the relevant time period. Moreover, institutional cell searches are a regular part of prison life that are highly unlikely to deter an average prisoner from pursuing his First Amendment rights. Consequently, Plaintiff has not established the second and third elements in the retaliation analysis against either Retort or Griffiths as to the September 22, 2018 cell search. *Muhammad*, 379 F.3d at 416.

## 2. Strip Search

Plaintiff alleges Retort and Griffiths verbally harassed him while undergoing a strip search. He contends that this occurred as a result of Plaintiff submitting grievances against Defendants. Defendants again do not dispute that filing an institutional grievance is protected conduct under the First Amendment. Defendants do, however, argue the frivolity of Plaintiff's grievances because he has a pattern of filing grievances any time he is issued a conduct report. ECF No. 54 at PageID #: 389; *see* ECF No. 54-5. Courts have upheld the use of routine strip searches following contact visits in prisons. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 573-74 (6th Cir. 2013).

(4:18CV2615)

Defendants argue that, similar to a cell search, the strip search is insufficient to establish retaliation without accompanying excessive force, threats, or a prior pattern of questionable searches.  In this instance, no such accompaniments occurred and it should not be considered an adverse action sufficient to deter the firmness of an ordinary prisoner.  Moreover, the strip search occurred as a matter of regular prison procedure.  When an inmate at the OSP returns from a visit, he is automatically strip searched.  According to Defendants, the officers were not motivated by some alleged protected conduct in performing the strip search.  Instead, it was a matter of procedure at the OSP.  ECF No. 54 at PageID #: 390.

Plaintiff does not present additional evidence beyond his own self-serving statements and complaint allegations to support his assertion that during the strip search Retort and Griffiths told Plaintiff to stick his fingers in his anus.  Because Plaintiff fails to allege more than verbal harassment by Retort and Griffiths, this retaliation claim is dismissed. *Johnson v. Cowling*, No. 2:19-cv-12448, 2019 WL 4189491, at *2 (E.D. Mich. Sept. 4, 2019).  Assuming *arguendo* that Plaintiff's grievances were not frivolous, Plaintiff has still not established the second and third elements in the retaliation analysis against either Retort or Griffiths as to the September 22, 2018 strip search.  *Muhammad*, 379 F.3d at 416.  There is no causal connection between any alleged adverse action and the claimed protected conduct.

F.   **Claim for Failure to Protect**

Plaintiff also does not provide evidence to establish a failure to protect claim against Wolfe and Franklin, via their capacity as Hearing Officer and Institutional Inspector, respectively.  He seeks to hold Wolfe and Franklin liable in connection with the grievance

21

(4:18CV2615)

process or investigation of his claims because they allegedly knew of the harassment he was experiencing. However, "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007). In addition, to the extent that Plaintiff claims that the grievance procedure failed to produce the correct outcome, this cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citations omitted). Prison officials whose only roles "involve the denial of administrative grievances or the failure to act" to remedy the alleged unconstitutional behavior cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Accordingly, Plaintiff's Eighth Amendment claim against Wolfe and Franklin brought in connection with the grievance process is dismissed for failure to state a claim upon which relief may be granted.[7]

---

[7] Plaintiff also failed to exhaust his administrative remedies against Franklin. OHIO ADMIN. CODE 5120-9-31(J) provides a method for inmates to submit grievances regarding appropriate supervision under OHIO ADMIN. CODE 5120-9-04. Plaintiff performed the first step of this process by submitting a grievance to Wolfe on December 6, 2017. *See* ECF No. 54-5. However, there is no evidence that Plaintiff appealed this grievance to the Office of the Chief Inspector as required by OHIO ADMIN. CODE 5120-9-31(J). Moreover, there is no evidence that Plaintiff brought any further grievances against Franklin at any time relevant to Plaintiff's allegations. *See* ECF No. 54-5. Consequently, the claim against Franklin must also be dismissed because Plaintiff failed to exhaust his administrative remedies as to him. Assuming *arguendo* that Plaintiff

(continued...)

22

(4:18CV2615)

### G.    Failure to Exhaust Administrative Remedies Against Wolfe

Plaintiff failed to exhaust his administrative remedies against Wolfe.  OHIO ADMIN. CODE 5120-9-31(L) provides a mechanism for inmates to grieve against the institutional inspector. While Plaintiff attempted on one occasion to grieve against Wolfe, on December 25, 2017, the Chief Inspector's Office determined that his grievance did not qualify for the grievance procedure because he failed to follow proper procedure.  *See* ECF No. 54-5.  Specifically, the Chief Inspector stated "[y]ou do not provide any specificity in your complaint that would allow this office to conduct a thorough review to determine if the Warden or Inspector personally and knowingly violated policy or rule."  ECF No. 54-5 at PageID #: 439.  Plaintiff failed to follow critical procedural rules of the Ohio grievance procedure.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  Consequently, he did not properly exhaust his administrative remedies as to Wolfe at any point.  Even if the Court determines that he did exhaust in relation to the incidents occurring before December 25, 2017, Plaintiff did not exhaust his remedies subsequent to that time because he did not file any other grievances.  Accordingly, Plaintiff's claims against Wolfe, including for violation of due process under the Fourteenth Amendment, are dismissed.

### H.    Qualified Immunity

Once a defendant raises qualified immunity, the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right

---

[7](...continued)
exhausted for the events prior to December 6, 2017, there is no evidence of subsequent grievances against Franklin.  Accordingly, those claims would not be properly exhausted and would be dismissed.

(4:18CV2615)

was so clearly established at the time of the alleged violation that every reasonable official would have understood that what he was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S 731, 741 (2011). If the plaintiff fails to carry this burden as to either element of the analysis, qualified immunity applies and the official is immune. *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491, 494 (6th Cir. 2012). "Clearly established law" should not be defined "at a high level of generality" and the clearly established law must be "particularized" to the facts of the case. *Ashcroft*, 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In *Saucier v. Katz*, the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity. 533 U.S. 194, 201 (2001). The Court must consider (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established. *Id.* In *Pearson v. Callahan*, the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is not mandatory, and courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first. 555 U.S. 223, 236 (2009). The Court does not address the qualified immunity argument of Defendants because it concludes for the reasons set forth above that Plaintiff has not sustained his burden to demonstrate a deprivation of his constitutional rights regarding any of his claims.

## V.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material fact and the movants are entitled to a judgment as a matter of law. For the foregoing reasons,

24

(4:18CV2615)

Defendants' Motion for Summary Judgment (ECF No. 54) is granted.  Final judgment will be

entered in favor of Defendants and against Plaintiff on the Complaint (ECF No. 1).  The Court

certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken

in good faith.


      IT IS SO ORDERED.


 September 28, 2020                  */s/ Benita Y. Pearson*      
Date                                 Benita Y. Pearson
                                         United States District Judge